SWINDELL et al. v. STEPHENS et al.

No. 2039.

Court of Civil Appeals of Texas. Beaumont.
Jan. 29, 1931.

Rehearing Denied Feb. 25, 1931.

David E. O'Fiel, of Beaumont, and Jas. F. Parker, of Kountze, for appellants.

Smith, Crawford & Combs, of Beaumont, for appellees.

WALKER, J.

For convenience the parties to this appeal will be designated appellants and appellees.

In January, 1925, appellants, Mrs. Mary V. Swindell, surviving wife of L. L. Sherman, deceased, joined by her husband, C. C. Swindell, Mollie Wiggins, joined by her husband, J. O. Wiggins, Myrtle Trail, joined by her husband, J. J. Trail, and Atly Sherman, joined by his wife, Florence Sherman, executed to appellees, A. D. Wilkins and R. R. Stephens, a mineral lease upon the following described tract of land:

"Being twenty-five (25) acres off of a Ninety (90) acre tract of land out of the Thomas D. Yoacum Survey in said Jefferson County, Texas, conveyed by A. D. Lipscomb to L. L. Sherman on the 1st day of December, 1923, by deed duly recorded in Volume 140 on Page 306 of the Deed Records to which Deed and the records thereof reference is hereby made for a more particular description thereof.

"The Twenty-five acres herein leased is to run from the East to the West line of said Survey and is to lie immediately north and adjacent to a Twenty-five (25) acre tract off of said survey leased by the Lessors herein to W. J. Pendergrass."

The following are the recitations in the lease detailing the consideration therefor:

"That the said lessors for and in consideration of the sum of $250.00 to them cash in hand paid, receipt of which is herein confessed, and the sum of Twenty-five Hundred ($2,500.00) Dollars to ——— paid six (6) months from this date, or sooner, if the lessees herein shall go upon and enter said land for the purpose of drilling for oil, gas or other minerals thereon, and of the covenants and agreements hereinafter contained on the part of the lessees, to be paid, kept and performed, have granted, demised, leased and let and by these presents do grant, lease and let unto the said lessees for the sole and only purpose of mining and operating for oil and gas, etc. * * * If no well be commenced on the said land on or before six (6) months from the final execution of this lease, or if said Twenty Five Hundred ($2,500.00) Dollars is not paid as hereinbefore provided, this lease shall terminate as to both parties and become null and void without any action in the courts thereon."

Three minor children of Mrs. Swindell by her marriage to L. L. Sherman are not named in the lease and did not join in its execution. This suit was brought by Mrs. Swindell and the other appellants against appellees to recover the $2,500 named in the lease on the theory that the promise to pay this sum was absolute; and not having been paid, appellees were liable on the stipulations of the lease for that sum. Appellees denied liability on the following allegations: First, general denial; second, on the express language of the lease they were not liable unless

they entered upon the lease for the purpose of developing the land for oil, which they did not do; third, if mistaken in the construction of the express language of the lease, then they plead it was ambiguous and that the real contract of the parties was that the $2,500 was not to be paid unless appellees entered upon the land for the purpose of developing it and that a mistake was made in writing the lease; fourth, appellants represented that they owned the ninety acres by specific metes and bounds, when in fact they owned only an undivided interest of ninety acres in a larger tract; fifth, appellants represented that no other persons were interested in the title of the land, which representation was false in that three minor children of Mrs. Swindell also had an interest in the land. On these allegations they prayed that appellants recover nothing against them and that they recover against appellants the $250 which in fact was paid when the lease was executed and delivered. Answering these allegations, appellants pleaded general denial, that appellees knew the facts both as to the existence of the minor children and as to the title to the land when they accepted the lease, and if they did not know the existence of the minor children, when the lease was executed, they afterwards acquired this information and with this information elected to hold the lease. They further pleaded that the land leased was the community property of Mrs. Swindell and her deceased husband, L. L. Sherman; that the community owed debts, and as survivor Mrs. Swindell had the right to make the lease in question.

The additional facts are: (a) The ninety-acre tract referred to in the lease was only an undivided interest in a larger tract, which fact was not known to appellees when they accepted the lease; (b) whether or not appellees knew of the existence of the minor children when the lease was executed was a disputed fact; (c) the community estate of Mrs. Swindell and her deceased husband, L. L. Sherman, owed debts on the date of the execution of the lease to the amount of about $1,700, which Mrs. Swindell swore she intended to pay from the $2,500 consideration named in the lease; (d) some time after the execution of the lease, but before the expiration of the six months' period named therein, appellees were informed of the existence of the minor children; upon receiving this information they demanded of Mrs. Swindell that she perfect their title by granting them the interest of the minors which she promised to do but did not do; the issue was raised that appellees relied upon this promise of Mrs. Swindell and continued holding the lease until the expiration of the six months' period, believing that she would perfect their title; (e) on the expiration of the time limit named in the lease, the title thereto not having been perfected, appellees executed a release back to appellants against any claim on their part to the land in controversy.

At the time this release back to appellants was executed by appellees, the lease was worthless. On the theory that the lease was ambiguous, the trial court permitted appellants to offer evidence as to the intent of the parties in executing the same. On this issue appellee A. D. Wilkins testified:

"I did not make them an unconditional promise or agreement to pay them $2500.00 or $100.00 an acre unconditionally. I could have leased it for $25.00 cash. That is the way they were leasing to Pendergrass. That is the same way they were leasing to him. But I told them I would give them $10.00 an acre cash, and then, if they got any oil in the well, any showing, and I went on it with a drilling rig and drilled it, I would pay them an additional $2500.00, or an additional $100.00 per acre; but if I did not go on it I would not pay them anything, and was to return it to them in six months. I told them to have it drawn up in the lease, and they went to Beaumont and had some lawyer fix it. When they brought it back to me, in accepting the lease I thought it embodied the terms I had agreed upon."

The following issues were submitted to the jury, answered as indicated:

"Special Issue No. 1. Was it the understanding and agreement between the plaintiff Mary B. Swindell and the defendants, R. R. Stephens and A. D. Wilkins, at the time of the execution and delivery of the oil, gas and mineral lease in evidence, dated January 31, 1925, that the payment of the $2,500.00 therein mentioned was to be made by the said Stephens and Wilkins six months from said date or sooner if said lessees should go upon the land for the purpose of drilling for oil, gas or other minerals and only to be paid in such event?" Answer: "Yes."

"Special Issue No. 2. Did plaintiff Mary V. Swindell at the time of the execution and delivery of the lease in evidence to the defendants and prior thereto represent to the defendants that the persons who signed said lease were the only persons who had an interest in the land covered by said lease?" Answer: "Yes."

"Special Issue No. 3. If in answer to the foregoing question you have answered 'yes,' then you will answer the following question: Did the defendant A. D. Wilkins rely upon such representations and accept said lease as tendered to him, believing in good faith that all persons having an interest in the land covered in said lease had signed the same?" Answer: "Yes."

"Special Issue No. 4. Did the defendants, A. D. Wilkins and R. R. Stephens, after learning that all parties owning an interest in the land covered by the lease in evidence

had not signed or executed such lease, elect to retain such rights as were conveyed under the lease as actually executed?" Answer.: "No."

On the theory that the promise to pay the $2,500 was absolute and unambiguous, and that, on the undisputed evidence, appellees knew of the existence of the minor children at the time of the execution of the lease, or, in any event, after acquiring that information elected to hold the lease, and that there was no misrepresentation as to the character of the title to the leased premises and that there was no evidence raising any of the issues submitted to the jury, appellants assert the proposition that, as a matter of law, they were entitled to an instructed verdict. There is no assignment that the findings of the jury were against the great weight and preponderance of the evidence. Appellants simply assert that there was no evidence to take the issues to the jury.

### Opinion.

 Giving effect to all the language of the lease, we believe it is unambiguous and by its express terms appellees were not liable on the promise to pay the $2,500 unless they entered upon the land "for the purpose of drilling for oil, gas or other minerals." We do not see what other construction could be given that portion of the lease which stipulated "if no well be commenced on the said land on or before six months from the final execution of this lease, or if said $2,500.00 is not paid as hereinbefore provided, this lease shall terminate as to both parties and become null and void without any action in the courts thereon." The failure to pay the $2,500 under this express language terminated the lease and rendered it absolutely void. If the lease was void, then appellees had no interest in the leased premises and appellants had no obligation against appellees to recover the $2,500; for if there was a liability on the part of appellees to pay the $2,500, then the lease was not void. The only language of the lease that could render this construction doubtful are the words "or sooner" just before the language of the lease "if the lessees herein shall go upon and enter said land for the purpose of drilling," etc. Appellants contend that by this language the $2,500 was to be paid at the end of six months or it was to be paid sooner if appellees entered upon the land before the expiration of the six months. With this explanation of the language, they give no meaning whatever to the further clause providing for the cancellation of the lease if the $2,500 was not paid or if no well was commenced within six months. Further, they do not undertake to say at what time the $2,500 would have become due had appellees entered upon the land within the six months' time for the purpose of drilling it for oil.

 If the construction we have given the lease is not correct, then it must be said that the language of the lease is ambiguous and that the court properly received evidence as to its meaning. Under the testimony of Mr. Wilkins copied above, the issue was raised that appellees were not to pay the $2,500 unless they entered upon the land for the purpose of drilling it for oil, etc. This testimony fully supports the jury's answer to question No. 1.

From what has been said it follows that the judgment of the trial court must be affirmed, and it is accordingly so ordered.